IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CLIFFORD FLEMING,                      )
                                       )
                    Plaintiff,         )
                                       )
          v.                           )          Civil Action No.  04-0895
                                       )
JO ANNE B. BARNHART,                   )
COMMISSIONER OF SOCIAL SECURITY,       )
                                       )
                    Defendant.         )

MEMORANDUM ORDER

CONTI, District Judge

*Introduction*

This is an appeal from the final decision of the Commissioner of Social Security

("Commissioner" or "defendant") denying the claim of Clifford Fleming ("plaintiff") for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42

U.S.C. §§ 423, *et seq.*  Plaintiff contends that the decision of the administrative law judge (the

"ALJ") that he is not disabled, and therefore not entitled to benefits, should be reversed because

the decision is not supported by substantial evidence.  Defendant asserts that the decision of the

ALJ is supported by substantial evidence.  The parties filed cross-motions for summary judgment

pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  The court will deny defendant's

motion and grant plaintiff's motion in part by reversing the decision of the ALJ and remanding

the case to the Commissioner for further proceedings consistent with this order.  The plaintiff's

motion is granted because the ALJ's determination that plaintiff is capable of light work is not

supported by his findings and the ALJ did not explain why he failed to weigh the medical

evidence of record which corroborated plaintiff's complaints of pain and other nonexertional limitations.

### *Procedural History*

On December 4, 2002, plaintiff filed an application for DIB (R. at 44), asserting a disability since February 19, 2002 (R. at 44, 201) by reason of lupus, arthritis and a blood disorder. (R. at 60.)  On February 6, 2003, he was denied benefits at the initial level (R. at 28) and filed a request for a hearing.  (R. at 32.)  On December 18, 2003 a hearing was held before the ALJ.  (R. at 197.)  Plaintiff appeared at the hearing and testified and was represented by an attorney.  (R. at 197, 200-05.)  In a decision dated December 22, 2003, the ALJ determined that plaintiff was not disabled and, therefore, was not entitled to benefits.  (R. at 10-19.)  Plaintiff timely requested a review of that determination and by letter dated April 23, 2004, the Appeals Council denied the request for review.  (R. at 5.)  Plaintiff subsequently commenced the present action seeking judicial review.

### *Legal Standard*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits.  42 U.S.C. § 405(g).  This court must determine whether or not there is substantial evidence which supports the findings of the Commissioner.  42 U.S.C. § 405(g).  "Substantial evidence is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate.'"  Ventura v. Shalala, 55 F. 3d 900, 901 (3d Cir. 1995)(quoting Richardson v. Perales, 402 U.S. 389 (1971)).  This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla."  Burns v. Burnhart, 312 F. 3d 113, 118 (3d Cir. 2003).  This standard, however, does not permit the court

to substitute its own conclusions for that of the fact-finder.  (Id.); Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001)(reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry).

### *Plaintiff's Background and Medical Evidence*

Plaintiff was 53 years old at the time of the hearing before the ALJ. (R. at 200.)  He resides with his wife.  (R. at 201.)  He received a GED and has no subsequent education. (Id.)  He has past work experience as a carpenter from September 1999 to October 2000, a warehouse dock worker from September 1997 to November 1997, a dock worker from September 1994 to March 1995, a motor pool mechanic from June 1991 to April 2000, and a truck tire serviceman from July 1982 to March 1991.  (R. at 61.)

In a 2002 visit to the hospital during which he complained of suffering from severe headaches, severe pain on his left side of his head, left jaw, and left eye pain, it was discovered that plaintiff had an episode of amarosis fugax in his left eye.  (R. at 102.)  He was later hospitalized after suffering from a second episode of amarosis fugax.  (Id.)  During his hospital stay he had an extensive work up and it was discovered that he suffered from lupus.  (Id.) Plaintiff was also diagnosed with inflammatory arthritis, polyarticular arthritis, lupus arthritis, and myalgia.  (R. at 96.)  At the hearing, plaintiff testified that he suffers from lower back pains and daily headaches made worse from stress and physical exertion.  (R. at 202-03.)

### *Discussion*

Under Title XVI of the SSA, a disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A). Similarly, a person is unable to engage in substantial gainful activity when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(B).

In order to make a disability determination under the SSA, a five-step sequential evaluation must be applied.  20 C.F.R. § 416.920.  The evaluation consists of the following stages: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the claimant's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional capacity.  20 C.F.R. §§ 404.1520, 416.920; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). If the plaintiff fails to meet the burden of proving the requirements in the first four steps, the ALJ may find that the plaintiff is not disabled.  Burns v. Burnhart, 312 F.3d at 119.  The

Commissioner is charged with the burden of proof with respect to the fifth step in the evaluation process. Id.

In the instant case, the ALJ found: (1) plaintiff has not engaged in substantial gainful activity since the alleged onset of disability on February 19, 2002; (2) plaintiff suffers from diffuse connective tissue disorder (lupus) and arthritis, which are severe; (3) these impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) plaintiff cannot return to any past relevant work; and (5) there were jobs in the national economy that plaintiff could perform.  (R. at 17.)

On appeal plaintiff argues that the ALJ committed two errors.  Plaintiff argues that the ALJ erred (1) in finding plaintiff capable of performing sustained activity at the light exertional level, and (2) in failing to give proper weight and fully evaluate his exertional and nonexertional restrictions of pain, fatigue, light-headedness, and impairment of concentration from his lupus and arthritis.

## I.      *The ALJ Improperly Found that Plaintiff was Capable of Performing Light Work*

Plaintiff maintains that the ALJ's decision that he retained the residual functional capacity to perform the physical requirements of light work was contrary to the evidence of record and not supported by substantial evidence.  Here, plaintiff argues that the only vocational evidence of his residual function capacity was rendered by the social security administration's examining physician, Dr. Holets, who restricted him to walking and standing for fours per day and lifting and carrying up to ten pounds.  (R. at 104.)  This latter restriction, plaintiff asserts

limits him at best to sedentary work and is in conflict with the definition of light work as set forth in the applicable regulations.

In rendering his decision, the ALJ accepted Dr. Holets's opinion that plaintiff's residual functional capacity was slightly lower than the light level and, without giving a basis for his decision, the ALJ ruled that these clinical findings were still consistent with the performance of light work.  "Light work" is defined as involving

> lifting no more that twenty pounds at a time with frequent lifting or carrying objects weighing up to ten pounds frequently.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R.§ 404.1567(b).

In order for an administrative law judge to find that a claimant can perform the requirements of light work activity, a physician must indicate that the claimant can perform activity that is consistent with the requirements of light work.  See Doak v. Heckler, 790 F. 2d 26, 29 (3d Cir. 1986).  Because the residual capacity assessment by Dr. Holets showed that plaintiff was not capable of performing at the light exertional level, the ALJ erred in ignoring that opinion without contradictory medical evidence.  See Gilliand v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986).

In this case, the ALJ used "grids" relating to light work to find that plaintiff was not disabled.  (R. at 17, 19.)  Specifically he concluded: "Based upon an exertional capacity for light work, and the claimant's age, education, and work experience, medical-vocational rule 202.14

6

(Appendix 2, Subpart P, Part 404, 20 CFR), <u>directs</u> a conclusion of 'not disabled.'" (R. at 19.) (emphasis added). The residual functioning capacity tables (the "grids") are used to determine whether a claimant is disabled when the claimant's physical abilities match the criteria on the relevant grid. 20 C.F.R.§ 404.1569. The grids must be used if a claimant can perform all of the duties at a particular work level, *i.e.,* sedentary, light, medium, or heavy and does not have nonexertional limitations. If a claimant has both exertional and nonexertional limitations, the grids may be used only as a "framework" along with other evidence in the record to determine whether or not the claimant is disabled. 20 C.F.R.§ 404.1569a(d); <u>see</u> <u>Jesurum v. Sec'y of the</u> <u>U.S. Dept. of Health and Human Servs.</u>, 48 F. 3d 114, 117-18 (3d Cir. 1995).

The ALJ's finding that plaintiff was capable of performing a "limited" range of light work does not support use of the grids for light work because plaintiff did not have the ability to lift more than twenty pounds at a time or to frequently lift up to 10 pounds which are some of the activities identified as being required for light work. <u>See</u> <u>Id.</u> at 17 ("light work generally requires the ability to stand and carry weight for approximately six hours of an eight hour day"). The ALJ did not explain how plaintiff could be found to be able to perform substantially all the activities required for light work when plaintiff could not perform the lifting requirements. Without plaintiff being able to perform the lifting activities required for light work the VE concluded that the limitation found by the ALJ supported at best sedentary work. (R. at 220.) The VE stated: "The use of the foot controls and the weight limitations bring it below light work." (<u>Id.</u>)

The ALJ's decision is somewhat perplexing because after applying the grids and finding plaintiff not disabled, he discussed the hypothetical posed to the VE. The ALJ noted he included in the hypothetical limitations of lifting "no more than 10 pounds occasionally" (R. at 17) and

occasional pushing and pulling of arm and leg controls which were characterized by the ALJ as being limitations consistent with light work.  The VE disagreed and considered those restrictions to be consistent with sedentary work.  The ALJ referred to other limitations related to light work, *i.e.*, "sitting most of the time with some pushing and pulling of arm or leg controls."  (R. at 18.) The ALJ failed to consider that for the grids for light work to be used even as a framework the claimant must be capable of performing substantially all the activities related to light work which includes lifting no more than 20 pounds occasionally and frequent lifting of up to 10 pounds.  The ALJ erred in applying the grids under those circumstances and concluding that plaintiff is not disabled.  On remand the ALJ will need to address whether the grids may be used and if so, what grid is applicable.  If the grids are not applicable, the ALJ will have to determine whether work exists for plaintiff in the national economy.

## II.      *ALJ did not  fully evaluate Plaintiff's Nonexertional Limitations*

          Plaintiff also argues that the ALJ failed to give proper weight to his nonexertional restrictions of pain, fatigue, light-headedness, and impairment of concentration from his lupus and arthritis. The standard for evaluating a claimant's subjective complaints, including pain, are set forth in the Social Security regulations. See Hartranft v. Apfel, 181 F.3d 358,362 (3d Cir. 1999). Once a claimant establishes a medical impairment that could reasonably be expected to produce the pain or other subjective symptoms alleged and which, taken with all other evidence, could lead to a conclusion of disability, the administrative law judge must assess the degree to which the claimant is accurately stating his or her subjective symptoms or the extent to which they are disabling.  Id.; see 20 C.F.R.§ 416.929.  In addition to medical evidence, the following factors may be considered in assessing the credibility of a claimant's statements: (1) daily activities; (2)

8

duration, location, frequency, and intensity of the pain and other symptoms; (3) precipitating and aggravating factors; (4) medication taken to alleviate pain or other symptoms; (5) treatment other than medication; (6) any other measures used to relieve the symptoms; and (7) other factors concerning functional limitations or limitations due to pain or other symptoms. 20 C.F. R. §416.929(c)(3)(i)-(vii).

The ALJ found that plaintiff's "capacity for light work is substantially intact and has not been compromised by any non-exertional limitations." (R. at 19.)  In reaching this conclusion, the ALJ found that the objective medical record was deplete of evidence pointing to the etiology or severity of plaintiff's pain that would justify giving full credit to his testimony.  (R. at 16.)  There, however, are several instances in plaintiff's medical records showing that he was either hospitalized or was seen by a doctor for symptoms associated with headaches or  pain associated with arthritis.  On April 18, 2002, Dr. Tudor G. Jovin reported that plaintiff complained of moderate to severe headaches and that he did not have migraines in the past.  (R. at 131.)  He noted that plaintiff "will take Celebrex for his headaches."  (R. at 132.)  Dr. Jovin on August 23, 2002, reported:

> Our concern is that [plaintiff] has continued to have these headache-type sensations that are disabling to him.  We are also concerned that he may be somewhat depressed, as well.  We have recommended that he start on an antidepressant for both the headaches as well as his mood, and we have prescribed Celexa. . . .  We have also scheduled a CT venogram just to rule out the possibility any type of venous thrombosis that could be a cause of his headache.

(R. at 130.)

9

Dr. Franklin A. Bontempo saw plaintiff on October 15, 2002

> for a history of headaches/TIA sx starting in 1/01 which progressed to severe L head, L jaw and L eye pain with episodes of transient loss of vision lasting 40-45 seconds. . . .  He was treated with a baby ASA initially which decreased the frequency and severity of the attacks but not completely.  As a result the ASA was increased to 325 mg. gd in 7/02 and he apparently has had no new events.

(R. at 133.)

On December 3, 2002, Dr. Rudy Antoncic reported that plaintiff was on aspirin and celebrex.  (R. at 145.)  On December 10, 2002, Dr. James E. Gebel, Jr. reported that plaintiff continued "to complain of occasional left temoral headaches that occur two-to-three times a week. [Plaintiff] states that these are not nearly as severe as they were initially."  (R. at 173.)  Dr. Gebel also noted that plaintiff was taking aspirin 325 mg. tables but "did not follow through with taking the Celexa that was prescribed on his last visit."  (Id.)  At the hearing the plaintiff testified that he suffered from pain and had to alter his daily activities.  (R. at 203, 208, 215, 217.)

"An administrative law judge may not ignore a claimant's subjective complaints and reports of other symptoms... particularly where the claimant's registers such complaints not only at the administrative hearing, but also during examinations by [the claimant's] physicians, as reflected in his contemporaneous reports and notes." Dorf v. Bowen, 794 F.2d 896, 902 (3d Cir. 1986).  The ALJ erred in failing to explain why the medical evidence of record was not weighed when considering plaintiff's subjective complaints of pain.  On remand assuming for the sake of argument that the grids do not compel a finding of disability, the ALJ if he discredits plaintiff's credibility, in whole or in part, must explain the rationale for his conclusion in accordance with Social Security Ruling 96-7p.

*Conclusion*

Based upon a review of the record and the parties' submissions filed  in support of their respective motions for summary judgement, the decision of the ALJ denying plaintiff's application for DIB is reversed and the case is remanded for further proceedings consistent with this opinion.

Therefore, plaintiff's motion for summary judgment (Docket No. 6) is **GRANTED in part** and **DENIED in part**, and  defendant's motion for summary judgment (Docket No. 8) is **DENIED.**

**IT IS ORDERED AND ADJUDGED** that this case shall be remanded to the Commissioner for further proceedings consistent with this opinion. The clerk shall mark this case closed.

By the court:


<u>/s/ Joy Flowers Conti</u>
Joy Flowers Conti
United States District Judge


Dated: January 20, 2006


cc: counsel of record

11